IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LARRY CARTER, by his mother and best
Friend Mrs. Mae Bertha Carter                                              PLAINTIFF

V.                                                                        CASE NO. 4:67-CV-00031

SUNFLOWER COUNTY SCHOOL DISTRICT,
successor in interest to THE DREW MUNICIPAL
SEPARATE SCHOOL DISTRICT                                                 DEFENDANT

## ORDER

This cause comes before the court on the renewed motion of defendant Sunflower County School District, successor in interest to the Drew Municipal Separate School District, for declaration of unitary status and dismissal of this desegregation case. Plaintiff Larry Carter has responded in opposition, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

The instant motion represents a renewed effort by defendant to obtain a dismissal of a case which this court has already dismissed once, only to later reconsider. In initially dismissing this case on July 2, 2012, this court wrote that:

> The court has recently been advised that Drew Municipal School District is being merged with the Sunflower County School District and on July 1, 2012, will no longer exist as an educational agency. Drew Municipal Separate School District is the only defendant in this case. Since the defendant no longer exists, the court cannot maintain jurisdiction over this cause of action. In light of the foregoing, the case is dismissed with prejudice. The defendant's motion for unitary status is dismissed as moot.

This court found it difficult to discern then, and still does now, how this case could coherently proceed in light of the fact that its sole defendant no longer existed.

Nevertheless, on December 20, 2012, this court reconsidered its July 2012 order dismissing this case on the basis of the school district merger. On reconsideration, the court agreed with plaintiff that "the most prudent step at this point is to keep this case on its docket pending clarification of the impact of the merger of the Drew and Sunflower school districts on the desegregation issues herein." In granting reconsideration, the court found particularly persuasive plaintiff's (belated) citation to the Fifth Circuit's decision in *Valley v. Rapides Parish School Bd.*, 173 F.3d 944 (5th Cir. 1999). In *Valley*, a parish school board moved for a declaratory judgment to invalidate a Louisiana constitutional amendment and statute designed to divide the Rapides Parish School District into two districts. A Louisiana district court struck down the statute and amendment as unconstitutional, and the state Attorney General appealed. On rehearing *en banc*, the Fifth Circuit vacated the district court's orders and remanded for further proceedings. *Valley*, 173 F.3d at 945. The Fifth Circuit in *Valley* directed that, on remand, the state should, after a board of trustees had been selected, be required to defend its creation of new school district by showing that the newly created district would not adversely impact a desegregation plan currently in place. *Id.*

While this court granted reconsideration on the basis of *Valley*, it hastened to add its skepticism regarding plaintiff's prospects going forward. Specifically, this court wrote that:

> In light of the foregoing, the court will show some leniency to plaintiff for failing to cite *Valley* originally and rescind its earlier dismissal of this case. Still, the court submits that the fact that the Drew School District no longer exists may well prove to be more in the nature of a brick wall than a speed bump to this litigation. While the court agrees that the impact of the merger on desegregation issues is worthy of additional study, care must be taken to ensure that something other than the simple inertia of a litigation spanning decades is driving this case forward. It should be emphasized that, at the time of this merger, the court was already considering issuing an order declaring the Drew School District to be unitary and dismissing this lawsuit altogether.

In a September 26, 2013 order, this court expounded upon its skepticism regarding the substantive merits of plaintiff's claims, writing that:

> [P]laintiff made a very weak showing at the June 2012 hearing to determine unitary status. Indeed, the court notes that no parents of actual schoolchildren showed up at that hearing to express their concerns, and defendant made a very strong showing that unitary status had been achieved.

The court further noted in its September 2013 order that:

> [T]he proof at the June 2012 hearing strongly suggested that, in whatever form the former Drew School District now exists, unitary status has been achieved with regard to it. It should be noted that there are two distinct issues before the court: 1) whether the remnants of the Drew School District have achieved unitary status and 2) the impact of the school district merger upon the issues in this case. With regard to the first issue, the court finds that defendant presented a strong case regarding unitary status at the June 2012 hearing. This court will not require defendant to present additional testimony in this regard at a hearing, although it may, after the seating of the new school board, submit any written proof or exhibits which it might have in this regard. Plaintiff represented to this court at the hearing that he was not prepared, at the time, to present his full case regarding unitary status, and he will likewise be given an opportunity, after January, to submit any written proof which he might have on the issue of unitary status to the court. Both sides should submit any proposed findings of fact and conclusions of law which they might have in this regard to the court.

The parties have complied with the court's instructions in this regard, including by submitting proposed findings of fact and conclusions of law. These submissions were made subsequent to the seating of the new five-member board of the Sunflower County Consolidated School District in January 2014, as the court understands to be the proper procedure under *Valley*.

Having reviewed the parties' submissions, the court remains of the view that, even assuming that the merger of the Drew School District into the Sunflower County Consolidated School District does not prevent this case from going forward, the fact remains that the proof at the June 2012 unitary status hearing strongly supported a conclusion that the remnants of the former Drew School District had achieved unitary status. The court held the hearing in

Greenville largely to make it more accessible to Drew residents, but it reiterates that not a single such resident showed up to oppose the declaration of unitary status, or even to express their concerns. At the hearing, the court was struck by the great contrast between the persistent litigation of this case by plaintiff and the lack of interest in it among the community.

The court has reviewed the proposed findings of fact submitted by plaintiff, and it sees a great disconnect from the very real problems which he describes as affecting the Sunflower County School District and any role which this largely dormant lawsuit might play in combatting them. Plaintiff describes funding deficiencies and incidents of "white flight" which are all too common in Delta school districts, but he provides no indication of what the instant lawsuit might do to combat what are largely societal issues affecting the Delta region as a whole. Indeed, these deficiencies have existed during the pendency of this lawsuit, and it is not at all clear from plaintiff's submissions what this case has been doing to combat them. In light of the strong showing made by defendant at the unitary status hearing, the court needs to hear far more specifics from plaintiff to assuage its skepticism that simple judicial inertia is driving this case forward at this point.

In his proposed findings of fact, plaintiff appears to reference a matter of statewide controversy which is presently being litigated in Mississippi state courts, namely the Mississippi legislature's alleged failure to fully fund school districts, as required by the Mississippi Adequate Education Program (MAEP). Specifically, plaintiff writes that:

> The State of Mississippi is the conservator of the Sunflower County School District until July 1, 2014, and therefore movant herein at the time of Defendant's Renewed Motion For Unitary Status & Dismissal, has failed for the past three years to fully fund the district so as to provide a minimally adequate education as defined and required by Miss. Code Section 37-151-6 et seq., Mississippi Adequate Education Program Funding.

It should be clear, however, that this court lacks jurisdiction to address any alleged failure by the State of Mississippi to comply with state law in this regard. Indeed, the Eleventh Amendment bars this court from awarding retroactive monetary awards against the state, and it may not even award prospective injunctive or declaratory relief against the State based upon violations of state (as opposed to federal) law. *See Pennhurst State Sch. v. Halderman*, 465 U.S. 89 (1984). Indeed, plaintiff has not even asked the court to do so, which raises the question as to why the MAEP issue was even mentioned in his proposed findings.

In the court's view, plaintiff's argument in this regard is typical of his approach in this case as a whole, which has been to argue that, since serious problems affect the defendant school district, this case should remain open indefinitely, regardless of whether it is actually doing anything to combat those problems or even whether it could conceivably do so. Indeed, it appears to this court that plaintiff is presently setting the bar for this lawsuit so high that it is difficult to see when it could ever be resolved. This court might be more inclined to grant plaintiff the benefit of the doubt in this regard if not for the lack of interest in this case shown by the Drew community at the June 2012 hearing.

Plaintiff references funding issues facing defendant, but the court doubts that these issues would be helped by forcing it to bear the expense of litigating this case indefinitely. This case has been on the court's docket for close to fifty years, and it is simply not accurate to state that a lawsuit of this nature is necessarily a continuing force for good. In this court's experience, some desegregation lawsuits may, over decades, devolve into entities which generate reports and attorneys' fees but which have little, if any, practical impact upon the lives of students. The resources which school districts must spend in generating reports and paying lawyers are

resources which they may not allocate to educating students. Accordingly, the court must always ask itself whether a desegregation lawsuit still serves a useful purpose which justifies its cost.

In the court's experience, it is not difficult to distinguish between desegregation lawsuits which still serve a useful purpose and those which do not. The former cases typically have strong interest among community members, who often travel significant distances to make their concerns known at hearings. Moreover, once they are at the hearings, the plaintiffs in the stronger cases are typically able to demonstrate specific actions which this court may take to ensure that, for example, African-American students are not made to feel unwelcome at a particular school.

This court saw no such evidence at the June 2012 hearing. Indeed, it was one of the weaker showings by a plaintiff in a desegregation lawsuit which it can recall. In this sense, the disappearance of the Drew School District around the same time struck this court as being an apt metaphor for this lawsuit as a whole, and it took the occasion of the merger to dismiss the case. The court was frankly surprised, in light of plaintiff's minimal showing at the hearing, that he made such efforts to keep this case alive. While the court does agree with plaintiff that the merger itself is insufficient reason to dismiss the lawsuit, it would not have dismissed this case if it felt, in light of the June 2012 hearing, that it still had a useful role to play in the Drew community. This court felt at the time that this lawsuit had outlived the useful purpose which it previously served, and it continues to feel this way today.

Having considered the parties' revised submissions, the court finds that the Drew School District proved at the June 2012 hearing that it had achieved unitary status, and nothing in its

merger with the Sunflower County School District alters its finding in this regard. This court will therefore adopt the defendant's proposed findings of fact and conclusions of law, stated below, and dismiss this lawsuit.

## FINDINGS OF FACT

1. The Drew School District ("District") merged with the Sunflower County School District effective July 1, 2012.

2. The District (the lone Defendant in this case) no longer exists as a school district.

3. The merging of the District with the Sunflower County School District had no negative impact on the desegregation of the school district.

4. By Mississippi law and with the approval of the U. S. Department of Justice, all three (3) school districts in Sunflower County, Mississippi (Drew School District, Indianola School District and Sunflower County School District), have been consolidated into one unified school district effective July 1, 2014.

5. The name of the consolidated school district is Sunflower County Consolidated School District.

6. The five (5) member Board of Trustees was elected on November 5, 2013, sworn in on January 6, 2014, and were seated as the governing body for the consolidated school district.

7. On June 19, 2014, Dr. Deborah Dace was appointed as Superintendent by the Board of Trustees of the Sunflower County Consolidated School District.

8. The District and successor Sunflower County School District have no authority over nor jurisdiction of the Mississippi Adequate Education Program funding (MAEP) and such funding mechanism is a legislative function.

9. Since 1969-1970, the District filed extensive data through its annual reports to the Court and attorneys for private plaintiffs pursuant to the 1969 Court Order.

10. There have been no objections of any kind filed against the District during the filing of all annual reports.

11. Both Sunflower County School District and Indianola School District have achieved unitary status and their cases have been dismissed by the Court with prejudice.

12. There has been no showing that the merger/consolidation has caused any negative effect on desegregation of the school district.

13. Plaintiffs have failed to provide to this Court any evidence that unitary status has not been achieved by the District.

14. There is no evidence before this Court that the District has not achieved unitary status.

## CONCLUSIONS OF LAW

1. The District has fulfilled its affirmative desegregation obligations under the applicable federal laws entitling the District to a declaration of unitary status.

2. Since 1969, the District has filed the required annual reports with the Court and attorneys for private plaintiffs containing the data required by the Court Orders and there have been no objections filed.

3. The District has fully and satisfactorily complied with the Court's desegregation order for a reasonable period of time since the 1969 Court Order was entered.

4. The District has eliminated the vestiges of part *de jure* discrimination to the extent practicable consistent with the Court's Orders. The District has demonstrated a good faith

commitment to comply with the Court's Orders and federal laws.

5. Based on the information and data provided by the District and on all surrounding facts provided by the District, the District has complied with the Court's desegregation order.

6. The Court takes judicial notice that the Mississippi Adequate Education Program funding (MAEP) is a legislative function enacted by the Mississippi Legislature.

7. There is no evidence that the school merger has had any negative impact on desegregation of the school districts.

8. The Court concludes that the District has met the legal obligations of unitary status and is entitled to dismissal of this action.

9. The Court orders that all prior injunctions are dissolved, jurisdiction of this Court is terminated and this case is dismissed with prejudice.

A separate judgment will be entered this date pursuant to Fed. R. Civ. P. 58.

So ordered, this the 3rd day of September, 2014.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**